UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------X
   JAMES O'REILLY and BRETT O'REILLY,

                              *Plaintiffs*,                MEMORANDUM
                                                                   AND ORDER

            -against-                                   23-cv-04249 (NCM) (JMW)

INCORPORATED VILLAGE OF
ROCKVILLE CENTRE,

                              *Defendant.*
----------------------------------------------X

**A P P E A R A N C E S:**

    John M. Brickman, Esq.
    Christian Browne, Esq.
    **McLaughlin & Stern, LLC**
    1122 Franklin Avenue, Ste 300
    Garden City, NY 11530
    *Attorneys for Plaintiffs*

    -and-

    Steven C. Stern, Esq.
    **Sokoloff Stern LLP**
    179 Westbury Avenue
    Carle Place, NY 11514
    *Attorney for Defendant*

**WICKS**, Magistrate Judge:

Plaintiffs, James O'Reilly and Brett O'Reilly ("Plaintiffs") commenced this land use action against Defendant, Incorporated Village of Rockville Centre ("Defendant" or the "Village") on June 8, 2023 alleging that their subdivision application was unreasonably delayed through legislative, Zoning Board of Appeals ("ZBA"), and Planning Board ("PB") processes.

1

*See generally*, ECF No. 1. Specifically, Plaintiffs assert three causes of action pursuant to 42 U.S.C. § 1983: (i) substantive due process, (ii) equal protection, and (iii) violations of the First Amendment, based on their appeal of determinations by these boards. (*Id*.) Following unsuccessful settlement attempts, Defendant moved to dismiss Plaintiff's Complaint in its entirety pursuant to Fed. R. Civ. P. 12(b)(6), and subsequently moved to stay discovery in this case pending the outcome of its motion to dismiss. (*See* ECF Nos. 19, 27, 28.) Now before the Court is Defendant's Motion to Stay Discovery (ECF No. 28), which is opposed by Plaintiff (ECF No. 27-20). The motion to dismiss is pending before the Honorable Natasha C. Merle (ECF No. 27). For the foregoing reasons, Defendant's Motion to Stay (ECF No. 28) is **GRANTED**.

## BACKGROUND

### I. Factual Background

The following factual allegations are drawn from the Complaint. *See generally*, ECF No. 1. Plaintiffs purchased a 1.75-acre parcel in the name of Brett O'Reilly, which was previously open space that was part of a five-acre campus owned by a local Church. (ECF No. 1 at ¶ 10.) The Church had been engaged in a dispute with a nursery school that resulted in the school vacating its basement, and some people in the community blamed Plaintiffs for the school's demise. (*Id*. at ¶¶ 15-16.) James O'Reilly had meetings with public officials regarding the potential development of the property in 2014. (*Id*. at ¶ 17-18.) On January 4, 2016, the Board of Trustees ("BOT") adopted a definition of the word "street" for the purpose of establishing lot or building frontage to refer to a "public road or street." (*Id*. at ¶ 19.)[1]

---

[1] According to Plaintiffs, under this new definition, only a "public road or street" could be used "for the purpose of establishing required dimensions or parameters of street frontage of a lot, use, building or structure." (*Id*. at ¶ 20.) Plaintiffs assert the Village construed the term "public road or street" to mean a street dedicated to, and owned by the Village. (*Id*.)

Plaintiffs allege the Village added the "street" definition in efforts to thwart Plaintiffs' development plan, which would entail the creation of a new dead-end, or cul-de-sac street, running off of Hempstead Avenue, to enable access to new lots. (*Id.* at ¶ 21-22.) Specifically, Plaintiffs allege the addition of the definition required them to seek and obtain zoning variances in order to proceed with their subdivision development. (*Id.* at ¶ 22.)

James O'Reilly "began to plan" their development in the spring of 2016, and "attempted to engage" with members of the BOT through the summer. (*Id.* at ¶¶ 23-26.) He wrote to Village Attorney A. Thomas Levin in September 2016, informing him Plaintiffs would dedicate a proposed roadway on his project to the Village. (*Id.* at ¶ 27.) He first filed a subdivision application on September 30, 2016. (*Id.* at ¶ 28.) Between October 2016 and April 2017, Plaintiffs engaged in communications with the Village regarding the application of the new definition of street to their project. (*Id.* at ¶¶ 29-30.) On April 21, 2017, the Village's new Superintendent of Buildings, Patrick O'Brien, informed James O'Reilly he needed to eliminate a strip of property that was proposed for one of the lots, and Plaintiffs changed the "strip design." (*Id.* at ¶¶ 32-33.)

The ZBA convened a hearing on May 24, 2017, but adjourned it because of an alleged defect in Plaintiffs' mailing notices, and rescheduled it for June 7, 2017. (*Id.* at ¶ 34.) Members of the public voiced "strenuous opposition" to the proposed subdivision and the hearing lasted for hours, after which the ZBA denied Plaintiffs' application. (*Id.* at ¶¶ 35-36.) Plaintiffs changed their plans by restoring the strip of land to the lot, which they claim eliminated the need for a street frontage variance, but Mr. O'Brien denied it because the proposed private roadway was not a street under the Village's definition. (*Id.* at ¶¶ 37, 45.) On July 10, 2017, the Village enacted a six-month moratorium on development of private roads, but the state court

struck it down. (*Id*. at ¶¶ 40, 46.)[2] On November 28, 2018, James O'Reilly submitted an entirely new application for six lots. (*Id*. at ¶ 48.) After some back-and-forth, on February 9, 2018, Plaintiffs were informed the application would go before the ZBA because it did not meet the requirements for street frontage. (*Id*. at ¶ 51.) It was heard by the ZBA on March 29, 2018. (*Id*.) The ZBA granted the variances. (*Id*. at ¶ 55.)

Plaintiffs' application went before the PB on July 10, 2018, and the hearing continued on July 17, 2018, when Plaintiffs were directed to submit an environmental impact statement ("EAF"). (*Id*. at ¶¶ 59-61.) Plaintiffs submitted the EAF, which the PB accepted at its September 12, 2018 meeting. (*Id*. at ¶ 63.) The PB reviewed the EAF and issued a "negative declaration" under the New York State Environmental Quality Review Act ("SEQRA"), but denied the application because "it was not in conformity with the character of the neighborhood." (*Id*. at ¶¶ 64-65.) Plaintiffs challenged the decision in an Article 78 proceeding, which the parties settled on August 6, 2019. (*Id*. at ¶¶ 66-69.)[3]

Plaintiffs recorded the map with the County Clerk on February 10, 2020, which offered to dedicate the new road to the Village. (*Id*. at ¶¶ 71-72.) They had already secured a buyer for the six lots, but the buyer canceled when the COVID-19 emergency began. (*Id*.) The Building Department issued the permits on July 20, 2020. (*Id*. at ¶ 77.) Following a remote BOT hearing on the dedication on July 23, 2020, the BOT approved the dedication of the road. (*Id*. at ¶ 73.) Although Plaintiffs claim the street was "essentially complete" by October 2020, the Village

---

[2] On July 17, 2017, Plaintiffs brought suit against Defendant in Nassau County Supreme Court seeking a hybrid declaratory judgment and injunctions to invalidate the moratorium. (ECF No. 1). On October 17, 2017, the Court invalidated the moratorium. (*Id.*)

[3] Plaintiffs commenced the CPLR Article 78 special proceeding against the Planning Board, challenging denial of their subdivision application on November 20, 2018. (*Id.* at ¶ 66.) The Planning Board approved Plaintiffs' subdivision application on August 6, 2019, the date of the settlement. (*Id.* at ¶ 69.)

insisted that the topcoat and other "punch list" items be completed, and utility easements and a performance bond be filed, prior to the final conveyance. (*Id*. at ¶¶ 78-86.) On May 17, 2022, the BOT approved the final conveyance and renamed the new street "Birch Lane." (*Id*. at ¶ 87.) Plaintiffs' subsequently sold the lots. (*Id*.) Thereafter, the Village twice amended the definition of "street" to avoid the confusion faced by Plaintiffs' subdivision. (*Id*.)

## II.     Procedural History

Plaintiffs commenced this action on June 8, 2023, against Defendant alleging the three causes of action for violation of Plaintiffs' substantive due process rights, violation of Plaintiffs' equal protection rights, and retaliation for Plaintiffs' exercise of their First Amendment rights. *See* generally, ECF No. 1. Specifically, Plaintiffs allege Defendant violated their constitutional rights by intentionally delaying Plaintiffs' development project for over five years. (*Id*. at ¶ 1.) Following unsuccessful settlement discussions (*see* Electronic Order dated November 20, 2023), Defendant moved to dismiss all claims asserted in the Complaint on March 14, 2024. (ECF No. 27.) Defendants subsequently moved to stay all discovery pending the outcome of the motion to dismiss on March 29, 2024. (ECF Nos. 28-3, 28-7.) Plaintiffs filed their Opposition to Defendant's Motion to Stay that same day. (ECF No. 28-6.)

## III.    The Parties' Contentions

In support of its Motion to Stay, Defendant asserts Plaintiffs' claims are unmeritorious because: (i) the claims are barred by the three-year statute of limitations for causes of actions brought under 42 U.S.C. § 1983; (ii) Plaintiffs' substantive due process claim fails to allege a deprivation of a property interest and that the government's action were egregious; (iii) Plaintiffs' class of one equal protection claim fails to provide similarly situated subdivision applications; and (iv) Plaintiffs' First Amendment claim fails the "plausibility test." *See*

5

*generally*, ECF No. 28-3. Defendant additionally argues that Plaintiffs seek "voluminous and overbroad discovery." (*Id.* at 11-14.) Finally, Defendant argues that Plaintiffs will not be prejudiced by a stay of discovery since they sold the lots in the subdivision. (*Id.* at 14.)

In their Opposition, Plaintiffs argue their claims are meritorious because the claims are not barred by the statute of limitations, and Plaintiff properly stated a substantive due process, equal protection, and First Amendment claim. *See generally*, ECF No. 28-6. Plaintiff avers that the typical three-year statute of limitations does not apply – rather, the claims must be analyzed and are timely under the "continuing violation doctrine." (*Id.* at 5-6.) Plaintiffs further argue their substantive due process claim would survive a motion to dismiss, since Plaintiffs' applications for land use approvals were denied as a result of Defendant's deliberate abuse of government power, and Plaintiffs maintained a property interest in the subdivision. (*Id.* at 8-10, 11-15.) With respect to their equal protection claim, Plaintiffs argue they stated a cause of action because similarly situated applicants of subdivisions were approved and Plaintiffs experienced a difference in treatment. (*Id.* at 16-20.) Finally, as to their First Amendment claim, Plaintiff argues that the plausibility test is satisfied because Defendant's further delayed the subdivision process due to Plaintiff's success in state court. (*Id.* at 19-20.)

Plaintiffs further argue that continuing discovery would not be burdensome, as many of the documents have already been produced in the state court action and Plaintiff is willing to limit discovery requests when warranted. (*Id.* at 21-22.) Plaintiffs contend they would be prejudiced by a stay in discovery since Plaintiffs would "be further delayed, memories fade, and evidence deteriorates." (*Id.* at 23.) Defendant's Reply to Plaintiffs' Opposition further refutes the applicability of the continuing violation doctrine and maintains that Plaintiffs failed to state a substantive due process, equal protection, and First Amendment claim. *See*

*generally*, ECF No. 28-7.

## DISCUSSION

"'[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the cases on its docket with economy of time and effort for itself, for counsel, and for litigants.'" *Thomas v. N.Y. City Dep't of Educ.*, No. 09-CV-5167, 2010 WL 3709923, at *2 (E.D.N.Y. Sept. 14, 2010) (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936)). The mere filing of a dispositive motion in and of itself does not halt discovery obligations in federal court.[4] That is, a stay of discovery is not warranted, without more, by the mere pendency of a dispositive motion. *Weitzner v. Sciton, Inc.*, No.CV 2005-2533, 2006 WL 3827422, at *1(E.D.N.Y. Dec. 27, 2006). Rather, the moving party must make a showing of "good cause" to warrant a stay of discovery. *Chesney v. Valley Stream Union Free Sch. Dist. No. 24*, 236 F.R.D. 113, 115 (E.D.N.Y. 2006). In evaluating whether a stay of discovery pending resolution of a motion to dismiss is appropriate, courts typically consider: "(1) whether the Defendants has made a strong showing that the plaintiff's claim is unmeritorious; (2) the breadth of discovery and the burden of responding to it; and (3) the risk of unfair prejudice to the party opposing the stay." *Id.* (citation omitted). "Courts also may take into consideration the nature and complexity of the action, whether some or all of the Defendants have joined in the request for a stay, and the posture or stage of the litigation." *Id.* (citation omitted).

"Upon a showing of good cause[,] a district court has considerable discretion to stay discovery pursuant to Rule 26(c)." *Al Thani v. Hanke,* 20-CV-4765 (JPC), 2021 WL 23312, at

---

[4] Contrast this with New York state court practice which expressly provides for a stay of discovery pending the filing of a dispositive motion. See N.Y. CPLR 3214(b) (automatic stay of "disclosure" upon service of dispositive motion).


*1 (S.D.N.Y. Jan. 4, 2021) (alteration in original) (quoting *Republic of Turkey v. Christies, Inc.*, 316 F. Supp. 3d 675, 677 (S.D.N.Y. 2018)). In assessing good cause, Courts look to "the particular circumstances and posture of each case." *Ellington Credit Fund, Ltd. v. Select Portfolio Servs., Inc.*, No. 08 Civ. 2437 (RJS), 2008 WL 11510668, at *2 (S.D.N.Y. June 12, 2008) (quoting *Hachette Distrib., Inc. v. Hudson Cnty. News Co.*, 136 F.R.D. 356, 358 (E.D.N.Y. 1991)). *Au fond,* the specific facts, circumstances and context of the case guide the court.

Here, the Court finds "good cause" to stay discovery in light of the arguments Defendants advances in its Rule 12(b)(6) motion for the reasons set forth below.[5] *First*, the arguments Defendant sets forth appear, at least on their face, to make a strong showing that Plaintiffs' claims are barred by the statute of limitations and otherwise fail on the merits. "Section 1983 claims brought in New York are subject to New York's three-year statute of limitations for general personal injury actions." *Bar-Mashiah v. Inc. Vill. of Hewlett Bay Park*, No. CV 18-4633 (AKT), 2019 WL 4247593, at *11 (E.D.N.Y. Sept. 6, 2019). Because Plaintiffs filed the Complaint in this action on June 8, 2023, they may recover only for those claims that accrued on or after June 8, 2020. *See id*; *Deepwells Estates Inc. v. Inc. Vill. of Head of Harbor*, 973 F. Supp. 338, 345 (E.D.N.Y. 1997) (internal citations omitted) ("An action accrues when the plaintiffs know, or had reason to know, of the injury that is the basis of the action.").

The Court finds that Plaintiffs "were well aware of the alleged injury purportedly created" by the Village's denial of their subdivision application – and their claims therefore

---

[5] The Court's consideration and analysis of the arguments set forth in Defendant's motion to dismiss Plaintiff's Complaint under Fed. R. Civ. P. Rule 12(b)(6) is purely for purposes of weighing whether a stay should be granted. This analysis should not in any way be construed as the Court prejudging the merits or predicting the outcome of the motion to dismiss before District Judge Natasha C. Merle.

accrued – prior to June 8, 2020. *Bar-Mashiah*, No. CV 18-4633 (AKT), 2019 WL 4247593, at *11. "In reaching this conclusion, the Court takes judicial notice" of the fact that Plaintiffs commenced an Article 78 special proceeding against the Planning Board, challenging denial of their subdivision application on November 20, 2018, "and therefore had to have been aware of the alleged injury created by [the Village's denial] at least as of [November 2018], when they first sought a judicial remedy via Article 78." *Id*; *see also* ECF No. 1 at ¶ 66. Plaintiffs' argument that the continuing violations doctrine tolls the three-year statute of limitations is unavailing. *Id*. ("Under the continuing violations doctrine, a claim challenging a continuous practice or policy of discrimination may not accrue until the last discriminatory act in furtherance of the policy."). *Preliminarily*, the Court notes that the "continuing violation doctrine is applicable in *limited* contexts, including Title VII discrimination and retaliation claims, Eighth Amendment claims of medical indifference brought under Section 1983, and Eighth Amendment claims for cruel and unusual punishment against federal officials." *Kwas v. Intergraph Gov't Sols.*, No. 15CV5897JFBAYS, 2016 WL 4502039, at *2 (E.D.N.Y. Aug. 24, 2016) (emphasis added).

"Apart from the fact that the Court is unaware of any authority applying the continuing violation doctrine to land-use disputes like this one," it additionally concludes that Plaintiffs "knew or should have known" of their claims at the time the Village denied their subdivision application, and therefore "there is no justification for the application of the continuing violation theory." *Bar-Mashiah*, No. CV 18-4633 (AKT), 2019 WL 4247593, at *12 (internal citations omitted); *Lubavitch of Old Westbury, Inc. v. Inc. Vill. of Old Westbury, New York*, No. 208CV05081GRBLGD, 2023 WL 6521621, at *16 (E.D.N.Y. Feb. 7, 2023) (internal quotations omitted) ("Plaintiffs overlook that where the continuing violation doctrine applies,

9

the limitations period begins to run when the defendant has engaged in enough activity to make out an actionable claim."); *Trinidad v. New York City Dep't of Correction*, 423 F. Supp. 2d 151, 165 n.11 (S.D.N.Y. 2006) (quoting *Stephens v. Hofstra University School of Law,* 2005 WL 1505601, at *4 (E.D.N.Y. Jun. 24, 2005) ("As a general matter, the continuing violation doctrine is 'heavily disfavored in the Second Circuit' and courts have been 'loath' to apply it absent a showing of 'compelling circumstances.'"); *see also Andrews v. Town of Wallingford*, No. 3:16-CV-01232 (JAM), 2017 WL 3588571, at *3 (D. Conn. Aug. 21, 2017), *aff'd*, 739 F. App'x 62 (2d Cir. 2018) (holding the continuing violations doctrine inapplicable to plaintiff's land-use claim).

To succeed on their substantive due process claim, Plaintiffs must "allege acts establishing (1) a cognizable property interest (2) that was invaded in an arbitrary and irrational manner." *Rankel v. Town of Somers*, 999 F. Supp. 2d 527, 546 (S.D.N.Y. 2014) (internal citations omitted) ("A plaintiff must plead governmental conduct that is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.") Plaintiffs' allegations that their applications for land use approvals were denied as a "result of Defendant's deliberate abuse of government power" are likely insufficient to state a substantive due process claim. *See e.g., Rankel*, 999 F. Supp. 2d at 546–47 (internal citations omitted) ("To the extent Plaintiff bases his claim on the Town's obligation to enforce its Codes, this purported obligation, as explained above, provides no protected interest because Plaintiff cannot demand that Defendants enforce these discretionary laws.")

Even assuming Plaintiffs had a property interest, they likely fail to allege the Village "engaged in conduct that is so egregious, so outrageous as to shock the conscience." *Id*. at 547 (quoting *Ruston v. Town Bd. of Skaneateles,* No. 06–CV–927, 2008 WL 5423038, at *5

10

(N.D.N.Y. Dec. 24, 2008)) (holding Plaintiff's allegation that the Town denied him permits, allowed infringement of his right of way, and targeted his property for baseless violations in retaliation for his First Amendment activity and to benefit his neighbors were "allegations of 'improper motives' and 'selective enforcement' on the part of municipal officials [that] fall into the 'non-conscience-shocking category.'").

To state a claim for equal protection, Plaintiffs can proceed on both a "selective enforcement" and a "class-of-one theory[:]"

> Where a plaintiff is treated unequally compared with others similarly situated, and when such treatment is based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person, the facts give rise to a claim of selective enforcement. Similarly, equal protection claims based on a so-called "class of one" theory involve claims where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment. A plaintiff asserting a selective enforcement or class-of-one claim must present evidence of similarly situated comparators.

*Dean v. Town of Hempstead*, 527 F. Supp. 3d 347, 430–33 (E.D.N.Y. 2021) (internal citations omitted) (cleaned up); *Pappas v. Town of Enfield*, 602 F. App'x 35, 36 (2d Cir. 2015) (quoting *Fortress Bible Church v. Feiner*, 694 F.3d 208, 223–24 (2d Cir. 2012)) ("Where a plaintiff challenges a zoning decision, that standard requires her to identify comparators who are similarly situated to her with regard to the zoning board's 'principal reasons' for denying the application.").

The Court similarly finds that Plaintiffs likely "have not met their burden of showing that they were treated differently compared to others similarly situated and that there is no rational basis for the difference in treatment as Plaintiffs fail to present evidence of similarly situated comparators." *Dean,* 527 F. Supp. 3d at 433 (collecting cases); *Rankel*, 999 F. Supp. 2d at 545 (dismissing Plaintiff's equal protection claim because "he failed to allege that he was treated

11

differently from similarly situated individuals."); *MacPherson v. Town of Southampton,* 738 F.Supp.2d 353, 371 (E.D.N.Y.2010) (dismissing equal protection claim because complaint failed to "identify any comparators or similarly situated entities"); *Gregory v. Inc. Vill. of Ctr. Island*, No. 14-CV-2889 JFB AKT, 2015 WL 5093623, at *13 (E.D.N.Y. Aug. 28, 2015) (internal quotations omitted) (collecting cases) (noting "a plaintiff alleging unfair treatment in a zoning/building context must plead specific examples of applications and hearings that were similar to plaintiff's application and demonstrative of the disparate treatment alleged" and holding plaintiff failed to plead "a class-of-one claim," because he "ha[d] not passed the threshold hurdle of pleading the existence of a comparator[,]" and his "assertions that similarly situated applicants were treated differently" were "purely conclusory").

To state a First Amendment retaliation claim, Plaintiffs must show: "(1) [they have] a right protected by the First Amendment; (2) [Defendant's] actions were motivated or substantially caused by his exercise of that right; and (3) [Defendant's] actions caused [them] some injury." *Dorsett v. Cnty. of Nassau*, 732 F.3d 157, 160 (2d Cir. 2013); *Rankel*, 999 F. Supp. 2d at 541 (internal quotations omitted) ("On a motion to dismiss, the court must be satisfied that such a claim is supported by specific and detailed factual allegations, which are not stated in wholly conclusory terms."); *Schubert v. City of Rye*, 775 F. Supp. 2d 689, 712 (S.D.N.Y. 2011) (internal quotations omitted) ("To succeed on their First Amendment retaliation claim[,] Plaintiffs must plausibly allege that their conduct was protected by the First Amendment, and that Defendants' conduct was motivated by or substantially caused by their exercise of free speech."). "The Court must 'conduct an inquiry into whether plaintiff's speech was actually chilled by the retaliatory conduct.'" *Soundview Assocs. v. Town of Riverhead*, 725 F. Supp. 2d

320, 341 (E.D.N.Y. 2010) (quoting *Saleh v. City of N.Y.*, No. 06–CV–1007, 2007 WL 4437167, at *3 (S.D.N.Y. Dec. 17, 2007)).

The Court finds that Plaintiffs' allegation that Defendant further delayed the subdivision process as a result of Plaintiff's success in state court is insufficient to plausibly state a claim of First Amendment retaliation. Even assuming that Plaintiffs' commencement of the state court action is conduct protected by the First Amendment[6], Plaintiff have not "explicitly and sufficiently alleged that the [D]efendant [delayed] their applications for permits . . . in retaliation for this protected conduct." *Hampton Bays Connections, Inc. v. Duffy*, 127 F. Supp. 2d 364, 373-74 (E.D.N.Y. 2001); *Schubert*, 775 F. Supp. 2d at 712-14 (collecting cases) (holding "Plaintiffs' conclusory and inconsistent allegations do not plausibly state a claim of First Amendment retaliation[,]" and noting "[a]t most, [the] [p]laintiffs are merely alleging that their complaints ... were ignored by [the] [d]efendants . . .[n]ot a single fact [was] alleged that plausibly supports an inference of retaliatory motive that can be drawn from Defendants' decision not to accede to Plaintiffs' request, rendering these boilerplate allegations insufficient"); *Old St. George's LLC v. Bianco*, 389 F. App'x 33, 35 (2d Cir. 2010) ("[T]he complaint does not plausibly allege that DeChiaro's decision to seek inclusion into the Westchester Agricultural District motivated or substantially caused any of the adverse actions complained of."); *Rosendale v. Brusie*, No. 07-CV-8149CS, 2009 WL 778418, at *9 (S.D.N.Y. Mar. 25, 2009), *aff'd*, 374 F. App'x 195 (2d Cir. 2010) (holding plaintiff's allegations that "in its campaign to retaliate against him because of his exercise of First Amendment rights, the town and the defendants have taken a purposeful, aggravated and persistent course of

---

[6] "The rights to complain to public officials and to seek administrative and judicial relief from their actions are protected by the First Amendment." *Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 91 (2d Cir. 2002).

13

conspiratorial ... non-enforcement of pertinent municipal zoning regulations" were, without supporting facts, "vague and conclusory allegations" insufficient to support a First Amendment retaliation claim.); *In the Matter of the Application of Hampshire Recreation, LLC v. Vill. of Mamaroneck*, No. 14-CV-7228 (CS), 2016 WL 1181727, at *10 (S.D.N.Y. Mar. 25, 2016), *aff'd sub nom. Hampshire Recreation, LLC v. The Vill. of Mamaroneck*, 664 F. App'x 98 (2d Cir. 2016) (collecting cases) ("[T]to the extent Plaintiffs argue that Defendants retaliated against them by denying their applications and efforts for rezoning, such a claim is not plausible."); *Musco Propane, LLP v. Town of Wolcott*, No. 10-CV-1400, 2011 WL 3267756, at *9 (D. Conn. July 28, 2011) (dismissing First Amendment retaliation claim where actions taken by town authorities after the plaintiff engaged in protected conduct "appear to be part of a continuing series of zoning decisions that began before" the protected conduct occurred). Having found that, on its face, Plaintiffs fail to make out their 1983 claims, the Court finds the first factor weighing in favor of a stay. *See Alapaha View Ltd. v. Prodigy Network, LLC,* No. 20-CV-7572 (VSB), 2021 U.S. Dist. LEXIS 89789, at *4 (S.D.N.Y. May 10, 2021) (finding stay warranted because the motion to dismiss may result in complete dismissal of the suit and did not appear to be "unfounded in the law").

*Second*, the breadth of discovery here, as presented by Defendant, favors a stay because the parties could avoid substantial burden and waste of precious resources by staying discovery until the motion to dismiss has been decided. Given that the land-use dispute dates as far back as 2014, it would be especially prudent to reserve any discovery until after the motion to dismiss is decided. *See e.g.*, *O'Sullivan v. Deutsche Bank AG*, No. 17-cv-8709 (LTS) (GWG), 2018 U.S. Dist. LEXIS 70418, at *26-27 (S.D.N.Y. Apr. 26, 2018) ("*O'Sullivan*").

*Third*, the Court does not find that a stay would result in any material prejudice to Plaintiffs, especially in light of the fact that they have already sold the lots in the subdivision. The circumstances presented here are strikingly similar to those in *O'Sullivan*, where the Court found that "the passage of a reasonable amount of time" alone "cannot itself constitute prejudice sufficient to defeat a motion to stay discovery." *O'Sullivan*, 2018 U.S. Dist. LEXIS 70418 at *30. In addition, the plaintiff's argument that documents may be destroyed was found to be a "usual litigation risk[] that affect[s] all the parties equally." *Id*. at *31. The court ultimately granted the defendants' motion to stay in light of the potential burden that can arise from undergoing discovery as well as defendants' strong showing that the pending motion to dismiss may be granted. *Id*.

The Court additionally notes this case is still in its nascent stages. Defendant's Rule 12(b)(6) motion to dismiss is fully briefed and *sub judice*. *See* ECF No. 27. This portends that any stay will be relatively short. Like *O'Sullivan,* the passage of time here is not a good reason to stay discovery despite the fact that memories may fade and documents may be hard to cull together. And, any delays in the case thus far have resulted from Plaintiffs' own decision to wait years to commence this action when they were equipped with the information since at least November 2018. Thus, it cannot be said that a short stay of discovery for a few months pending the decision of an already fully briefed motion to dismiss will result in a prejudice to Plaintiffs. Accordingly, weighing all the relevant factors, the Court finds that a stay of discovery pending the outcome of Defendant's Rule 12(b)(6) motion is warranted.

## **CONCLUSION**

For the foregoing reasons, good cause exists warranting the issuance of a stay of discovery pending the outcome of Defendant's Rule 12(b)(6) motion to dismiss. Accordingly,

Defendant's motion to stay discovery (ECF No. 28) is **GRANTED**. In the event the pending motion to dismiss is denied, the parties are directed to file within ten days of the issuance of the Order on that motion a proposed discovery schedule for the undersigned's consideration.

Dated:  Central Islip, New York
        May 8, 2024

**S O  O R D E R E D:**

/s/ *James M. Wicks*
      JAMES M. WICKS
      United States Magistrate Judge

16