UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

JAMES O'REILLY; BRETT O'REILLY,

                *Plaintiffs*,

– against –

INCORPORATED VILLAGE OF
ROCKVILLE CENTRE,

                *Defendant.*

**MEMORANDUM & ORDER**
23-cv-04249 (NCM) (JMW)

---

**NATASHA C. MERLE**, United States District Judge:

Before the Court is defendant's Motion to Dismiss, ECF. No. 27,[1] plaintiffs' complaint in its entirety with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6). Plaintiffs James and Brett O'Reilly bring this action against the Incorporated Village of Rockville Centre (the "Village") pursuant to 42 U.S.C. § 1983 ("Section 1983") for alleged violations of the First and Fourteenth Amendments, specifically the Due Process and Equal Protection clauses therein. U.S. Const. amends. I, IV. For the reasons stated below, defendant's Motion is **DENIED** in part, **GRANTED** in part.

## BACKGROUND

*A. Plaintiffs' First Subdivision Plan*

On April 16, 2014, plaintiffs purchased a 1.75-acre parcel located in the Village from a local church. Compl. ¶¶ 10–11, ECF No. 1. During the end of 2015 and beginning

---

[1] The Court hereinafter refers to the Memorandum of Law in Support of Defendant's Motion to Dismiss, ECF No. 27-18, as the "Motion"; plaintiffs' Memorandum of Law in Opposition to Defendant's Motion to Dismiss, ECF No. 27-20, as the "Opposition"; and the Reply Memorandum of Law in Support of Defendant's Motion to dismiss, ECF No. 27-24, as the "Reply."

1

of 2016, plaintiffs spoke to the Village's mayor and building superintendent regarding their desire to subdivide the parcel. Compl. ¶¶ 17–18. Around that same time, the Village Board of Trustees ("BOT") added a definition of "street" to the municipal code for purposes of required street frontage for lots and structures, referring specifically to a "public road or street." Compl. ¶¶ 19–20.

After several months of planning and working with local building, public works, and fire departments, plaintiffs filed their first subdivision application in September 2016. Compl. ¶¶ 23, 28. Plaintiffs sought approval from the Village Planning Board (the "Planning Board") to subdivide their property into four lots accessible by a new street. Compl. ¶ 28. During the next six months, plaintiffs communicated with Village officials regarding how to apply the new definition of "street" to plaintiffs' plan. Compl. ¶ 29.

In April 2017, the Village building superintendent informed plaintiffs that, although the proposed plan complied with local zoning rules, they must eliminate an "awkward," narrow strip of land from the plan. Compl. ¶¶ 31–32. Elimination of this strip of land would cause one of the four lots to lose the required street frontage. Compl. ¶ 32. Plaintiffs agreed to make this change to their plan, in part because the Village building superintendent represented that plaintiffs would be able to obtain a zoning variance that would exempt that lot from the municipal street frontage requirements. Compl. ¶¶ 32–33. The Village had granted such variances recently in connection with residential construction nearby plaintiffs' property. Compl. ¶ 33.

The Village Board of Zoning Appeals (the "Zoning Board") was scheduled to consider plaintiffs' variance request at a hearing in May 2017, which, over plaintiffs' objection, was adjourned until the next month. Compl. ¶¶ 34–35. The June hearing regarding the variance request ran for hours and included "strenuous opposition" to

2

plaintiffs' entire plan from "scores of members of the public." Compl. ¶ 35. The Zoning Board denied plaintiffs' variance application. Compl. ¶ 36.

### B. First Article 78 Proceeding

After the Zoning Board denied the requested variance, plaintiffs re-submitted their initial subdivision plan, which included the required frontage for each lot. Compl. ¶ 37. However, officials did not refer the re-submitted plan to the Planning Board for approval. ¶ 39. Instead, the BOT issued a moratorium prohibiting construction of new private roads in the Village for the next six months. Compl. ¶ 40.

In July 2017, plaintiffs challenged the Village's private road moratorium. Compl. ¶ 44. They sought declaratory and injunctive relief from New York state court, pursuant to Article 78 of the New York Civil Practice Rules, N.Y. C.P.L.R. § 78 ("Article 78"), in order to prevent the Village from enforcing the moratorium or its new definition of "street." Compl. ¶ 44; *see also* N.Y. Sup. Ct. Short Form Order, Compl. Ex. A. In October 2017, the state court invalidated the private road moratorium after finding that the Village had targeted plaintiffs' subdivision plan and used the mortarium as a "pretext to stop an unpopular development." Compl. ¶ 46. However, by the end of November, the Village had not referred plaintiffs' subdivision plan to the Planning Board for a determination. Compl. ¶ 48.

Plaintiffs then submitted a new subdivision plan that included six lots situated on a new cul-de-sac street. Compl. ¶ 48. After "addressing comments that had already been addressed numerous times and new comments, suddenly raised for the first time" by Village officials, plaintiffs were informed that their plan would be sent back to the Zoning Board rather than set for a hearing before the Planning Board, as expected. Compl. ¶¶ 50–

3

51. The reason for this setback was the plan's purported noncompliance with the Village's newly defined term "street." Compl. ¶¶ 51–52.

In March 2018, plaintiffs again sought assistance from the state court to address the Village's delay in processing their subdivision application. Compl. ¶ 53. The next month, the Zoning Board granted variances for plaintiffs' subdivision plan, which included the requisite frontage but "on a street the Village consider[ed] private." Compl. ¶¶ 54–55.

C. *Second Article 78 Proceeding*

In July 2018, the Planning Board requested an environmental impact statement ("EAF") from plaintiffs pursuant to the State Environmental Quality Review Act ("SEQRA"). Compl. ¶¶ 59, 61. Plaintiffs submitted the EAF later that month. Compl. ¶ 62. The Planning Board accepted plaintiffs' EAF in September and issued a declaration the next month, finding no negative environmental impacts. Compl. ¶¶ 62, 64.

However, in November 2018, the Planning Board denied plaintiffs' plan because it was "not in conformity with the character of the neighborhood." Compl. ¶ 65. Plaintiffs then filed a second Article 78 proceeding, this time challenging the Planning Board's decision to deny their subdivision application. Compl. ¶ 66. In May 2019, the parties reached a settlement in this second Article 78 proceeding. Compl. ¶ 68. On August 6, 2019, the Planning Board approved plaintiffs' subdivision plan, subject to the conditions contained in the Article 78 settlement. Compl. ¶ 69.

D. *Plaintiffs' Subdivision Completion*

In February 2020, plaintiffs recorded their subdivision map and officially offered to dedicate the new street therein as a public roadway. Compl. ¶¶ 71–72. Completion of the conveyance was the last step in finalizing plaintiffs' subdivision. *See* Compl. ¶¶ 72, 87.

On July 23, 2020, the BOT approved plaintiffs' street dedication subject to conditions similar to those set forth in the Article 78 settlement and adopted by the Planning Board when approving plaintiffs' plan. Compl. ¶¶ 73–75.

However, between October 2020 and June 2021, Village officials expressed uncertainty regarding the requirements for completion of the new public road. Compl. ¶¶ 78, 79. By August 2021, they issued a final "punch list" of requirements, with which plaintiffs complied. Compl. ¶ 80. After delays and additional requirements set forth by the BOT, plaintiffs then filed costly utility easements and awaited a hearing on their street dedication. Compl. ¶¶ 81–82. During this time, plaintiffs also conveyed the new street to the Village via a formal deed. Compl. ¶ 83.

In December 2021, Village officials issued a new list of road requirements, including a $950,000 performance bond, followed by another list of requirements in February 2022. Compl. ¶¶ 84–85. Plaintiffs complied with each of these requirements. Compl. ¶ 85. After a Village employee urged an additional requirement for the street's catch-basins, the BOT adjourned its hearing regarding plaintiffs' plan. Compl. ¶ 86.

On May 17, 2022, the BOT approved plaintiffs' new street conveyance. Compl. ¶ 87. This brought plaintiffs' subdivision process to a close. Compl. ¶¶ 87–88. Prior to the completion of the approval process, plaintiffs were "forced to sell, instead of develop, the lots due to the financial and emotional strain that they had endured at the hands of the Village." Compl. ¶ 87.

In June 2023, plaintiffs filed this action alleging that the Village violated their constitutional rights to due process, equal protection, and free speech by delaying approval of their proposed subdivision for nearly six years.

5

**DISCUSSION**

When deciding a motion to dismiss, a district court must "accept[] all factual claims in the complaint as true, and draw[] all reasonable inferences in the plaintiff's favor." *Lotes Co. v. Hon Hai Precision Indus. Co.*, 753 F.3d 395, 403 (2d Cir. 2014).[2] Factual disputes are typically not the subject of the Court's analysis at this stage, as Rule 12 motions "probe the legal, not the factual, sufficiency of a complaint." *Plastic Surgery Group, P.C. v. United Healthcare Ins. Co. of New York, Inc.*, 64 F. Supp. 3d 459, 468–69 (E.D.N.Y. 2014). That is, "the issue" on a motion to dismiss "is not whether a plaintiff will ultimately prevail" but instead whether a plaintiff is "entitled to offer evidence to support the claims." *Sikhs for Just. v. Nath*, 893 F. Supp. 2d 598, 615 (S.D.N.Y. 2012). Accordingly, "[d]ismissal is inappropriate unless it appears beyond doubt that the plaintiff can prove no set of facts which would entitle him or her to relief." *Sweet v. Sheahan*, 235 F.3d 80, 83 (2d Cir. 2000).

The Village moves to dismiss plaintiffs' claims on two primary grounds: statute of limitations and failure to state a claim. The Court will address each in turn.

I. *Statute of Limitations*

The Village contends that any claims arising from plaintiffs' allegations dated prior to June 2020 are time-barred pursuant to the applicable three-year statute of limitations for Section 1983 claims. Mot. at 9–10.[3] Plaintiffs do not dispute the applicable statute of limitations but urge the Court to apply the continuing violation doctrine to their

---

[2] Throughout this Opinion, the Court omits all internal quotation marks, footnotes, and citations, and adopts all alterations, unless otherwise indicated.

[3] Throughout this Opinion, page numbers for docket filings refer to the page numbers assigned in ECF filing headers.

6

Fourteenth Amendment claims[4] in order to find that all allegations in the complaint are timely. *See* Opp'n at 8. For the reasons stated below, the Court declines to apply the continuing violation doctrine when analyzing plaintiffs' claims.

Pursuant to New York and federal law, a three-year statute of limitations applies to claims filed under Section 1983. *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 79 (2d Cir. 2015); *see also Fahs Const. Grp., Inc. v. Gray*, 725 F.3d 289, 292 (2d Cir. 2013) ("The statute of limitations on an Equal Protection claim brought in New York under 42 U.S.C. § 1983 is three years."). That is, plaintiffs have three years to file suit after they knew or had reason to know of the harm complained of in the action. *See Shomo v. City of New York*, 579 F.3d 176, 181 (2d Cir. 2009). Here, plaintiffs' allegations reach back to 2016—roughly seven years prior to their filing of this action in June 2023. Pursuant to the applicable statute of limitations, plaintiffs' allegations of constitutional violations that precede June 2020 would therefore be time barred.

However, plaintiffs argue that their claims are timely pursuant to the continuing violation doctrine. This doctrine applies to claims "that by their nature accrue only after the plaintiff has been subjected to some threshold amount of mistreatment" by the defendant. *Gonzalez v. Hasty*, 802 F.3d 212, 220 (2d Cir. 2015). In order for the doctrine to apply, plaintiffs must (1) include allegations that are not time-barred and (2) show that they could not have brought their claims earlier because the "threshold amount of mistreatment" had not yet been met. *See id.* If plaintiffs' allegations constitute "discrete unlawful acts," the continuing violation doctrine does not apply. *Id.* Where it does apply,

---

4    Plaintiffs do not argue that the continuing violation doctrine applies to their First Amendment claim. *See* Opp'n at 8–11 (noting that "each of plaintiffs' causes of action" are timely but describing only the Fourteenth Amendment claims in the context of their continuing violation doctrine argument).

7

the statute of limitations "begins to run when the defendant has engaged in enough activity" for plaintiff "to make out an actionable claim." *Id.* The Court must therefore determine at what time plaintiffs could have brought their Section 1983 claims.

Courts in this circuit typically apply the continuing violation doctrine in employment discrimination cases, *Sherman v. Town of Chester*, 752 F.3d 554, 566–67 (2d Cir. 2014), while applications in other contexts are "generally disfavored" unless the movant can show "compelling circumstances," *Corsini v. City of New York*, No. 20-cv-5459, 2021 WL 5999631, at *8 (E.D.N.Y. Dec. 20, 2021). However, the Second Circuit has applied the doctrine "to various constitutional claims brought under § 1983," including a Fourteenth Amendment equal protection claim. *Lucente v. Cnty. of Suffolk*, 980 F.3d 284, 309 (2d Cir. 2020) (citing, *inter alia*, *Fahs*, 725 F.3d at 291–92).

In *Sherman v. Town of Chester*, the Second Circuit considered the continuing violation doctrine in the context of a Fifth Amendment takings claim. The Court found that plaintiffs had adequately alleged a "claim based on [] a 'death by a thousand cuts' theory," which "requires a court to consider the entirety of the government entity's conduct, not just a slice of it." *Sherman*, 752 F.3d at 566. Specifically, the Court found that the defendant town "used extreme delay to effect a taking" by way of an "unusual series of regulations and tactical maneuvers." *Id.* at 566–67. Because the taking did not occur at any one point in time and thus "no single component [was] unconstitutional when considered in isolation," application of the continuing violation doctrine was appropriate. *Id.* at 567.

In the context of an equal protection claim, a plaintiff "must allege both the existence of an ongoing policy of discrimination and some non-time-barred acts taken in furtherance of that policy." *Lucente*, 980 F.3d at 309. Here, plaintiffs contend that the

8

continuing violation doctrine applies because the "shocking element" of their substantive due process claim and the "nature of the disparate treatment" underlying their equal protection claim both "turn[] upon [d]efendant's whole course of conduct." Opp'n at 9–10. While this contention is not frivolous, plaintiffs have not demonstrated that their allegations would not have supported federal constitutional claims prior to June 2020.

Over the past several years, plaintiffs have brought two Article 78 proceedings against defendant. First, in July 2017, plaintiffs challenged the Village's moratorium on the construction of private roads. Compl. ¶¶ 40, 44. Then, in November 2018, plaintiffs challenged the Planning Board's denial of their subdivision application. Compl. ¶ 66. Indeed, the majority of plaintiffs' complaint focuses on "outrageous" conduct that occurred prior to the beginning of the 2018 Article 78 proceeding, *see* Compl. ¶¶ 19–65, and many of the factual allegations post-dating November 2018 involve the Village's *compliance* with the Article 78 settlement, *see* Compl. ¶¶ 69–89. Therefore, soon after November 2018—or at the latest by the conclusion of that Article 78 action the next May—plaintiffs could have brought their Fourteenth Amendment claims in federal court based on years of allegedly wrongful conduct that resulted in denial of their subdivision application, which they believed warranted state court intervention. The fact that plaintiffs were largely successful in both Article 78 proceedings lends credence to the conclusion that plaintiffs were aware of the Village's potential violations of federal law at the conclusion of those proceedings in October 2017 and May 2019, respectively.

Furthermore, even if plaintiffs' equal protection claim as alleged is premised on the full subdivision approval process, the approval processes for the proposed comparable subdivision applications "took approximately one year," Compl. ¶¶ 92, 94. The Village would thus have likely "engaged in enough activity to make out an actionable claim,"

9

*Corsini*, 2021 WL 5999631, at *7, at least by November 2018—over two years after plaintiffs first filed their subdivision application, Compl. ¶ 28, and more than three years prior to the commencement of this action.

Because plaintiffs knew or should have known sometime between November 2018 and May 2019 of the harms they now ask this Court to remedy, the continuing violation doctrine is inapplicable to their Fourteenth Amendment claims. The Court therefore only considers plaintiffs' allegations that fall within the three-year statute of limitations period—in other words, those that post-date June 2020.

Plaintiffs' remaining allegations begin with the planning board's meeting on July 23, 2020, in which the BOT accepted dedication of plaintiffs' proposed street. Compl. ¶ 73. Over the next roughly two years, Village officials and employees placed additional conditions on completion of the new road before plaintiffs could convey the public street and thereby bring their subdivision process to a close. Compl. ¶¶ 77–87. On May 17, 2022, the BOT approved the final conveyance of the new street and plaintiffs' subdivision of their property was complete. Compl. ¶¶ 87–88.

II.     *Failure to State a Claim*

In order to survive a motion to dismiss pursuant to Rule 12(b)(6), a plaintiff must state "a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim is plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Matson v. Bd. of Educ.*, 631 F.3d 57, 63 (2d Cir. 2011) (quoting *Iqbal*, 556 U.S. at 678). Although the Court takes all factual allegations contained in the complaint as true, it does not do so for legal conclusions or "[t]hreadbare recitals of the elements of a cause of action, supported

10

by mere conclusory statements" in a complaint. *Iqbal*, 556 U.S. at 678. The Court may, however, take judicial notice of and rely on materials outside the four corners of the complaint if, for example, they constitute public records over which "no dispute exists regarding" their accuracy. *Goe v. Zucker*, 43 F.4th 19, 29 (2d Cir. 2022), *cert. denied sub nom. Goe v. McDonald*, 143 S. Ct. 1020 (2023); *see Franco v. Siry*, No. 22-cv-04674, 2024 WL 2701646, at *5 (E.D.N.Y. May 24, 2024) ("When ruling on motions to dismiss, courts in this Circuit regularly consider town codes, public meeting minutes, and decisions of local bodies such as zoning boards.") (collecting cases).

    a. <u>Substantive Due Process</u>

The Village contends that plaintiffs have failed to state a substantive due process claim because they have not sufficiently pled a property interest in (i) the approval of their subdivision plan and (ii) the conditions placed on that approval. Mot. at 12–13. Plaintiffs disagree and urge the Court to take a more holistic approach to this claim because their allegations boil down to an illegitimate use of process against "disfavored" and "unpopular individuals" rather than a property dispute. Opp'n at 9, 11. Plaintiffs also contend that, regardless, the planning board's limited discretion to deny their application provided them with a property interest in the approval of their subdivision plan. Opp'n at 14. For the reasons set forth below, the Court finds that plaintiffs have sufficiently pled a substantive due process claim.

A substantive due process claim is analyzed in two parts: "[t]he first step . . . is to determine the constitutional right that is implicated." *Matzell v. Annucci*, 64 F.4th 425,

437 (2d Cir. 2023). In the context of a land use dispute,[5] the Court must determine whether plaintiffs have a constitutionally protected property interest. *S. Nassau Bldg. Corp. v. Town Bd. of Town of Hempstead*, 624 F. Supp. 3d 261, 279 (E.D.N.Y. 2022). If a constitutionally protected property interest is implicated, "[t]he second step . . . is to determine whether [defendant's] conduct shocks the conscience." *Matzell*, 64 F.4th at 437. To do so, the Court must consider whether the government's conduct "in depriving [plaintiffs] of that property interest" was "arbitrary or irrational." *Crowley v. Courville*, 76 F.3d 47, 52 (2d Cir. 1996); *see O'Connor v. Pierson*, 426 F.3d 187, 204 (2d Cir. 2005) ("constitutionally arbitrary action for purposes of a property-based substantive due process claim is action that shocks the conscience").

In assessing whether plaintiffs have a constitutionally protected property interest in the approval of their subdivision application, the Court must determine whether that interest is "more than an abstract need or desire" and instead "a legitimate claim of entitlement." *RRI Realty Corp. v. Inc. Vill. of Southampton*, 870 F.2d 911, 915 (2d Cir. 1989). A claim of entitlement arises "only when the discretion of the issuing agency is so narrowly circumscribed as to virtually assure" conferral or approval. *Gagliardi v. Vill. of Pawling*, 18 F.3d 188, 192 (2d Cir. 1994). Whether plaintiffs have a constitutionally protected property interest is a question of law. *RRI Realty Corp.*, 870 F.2d at 918.

Here, plaintiffs have sufficiently pled a property interest in their subdivision given the Village's limited discretion regarding the final approval and their alleged "investment-

---

5    Plaintiffs contend that this claim arises not merely out of a land use dispute but rather the Village's "pattern of conduct in which Defendant used its regulatory powers for illegitimate means—targeting unpopular individuals and their project for destruction to gain political advantage." Opp'n at 9. Plaintiffs cite little to no support for this framing of their claim and, regardless, proceed to defend their claim under the typical land use doctrine for substantive due process claims. *See* Opp'n at 11.

12

backed expectations." *See S. Nassau Bldg. Corp.*, 624 F. Supp. 3d at 279. At the time of purchase, plaintiffs' parcel of land was located within the Village's residential zoning district. Compl. ¶ 13. The municipal code specifies that buildings in that district require a lot size of at least 8,000 square feet and 80 feet of street frontage. Compl. ¶ 13. Based on the size of the 1.75-acre parcel, plaintiffs allege that they could subdivide their parcel into "seven legal 'as of right' building lots." Compl. ¶ 13. For its part, the Village—through the Planning and Zoning Boards—has the power to consider and approve or deny a subdivision application. *See* Village Code § 330-1, Mot. Ex. P at 2. To that extent, the Village has some amount of discretion in reviewing subdivisions.

But that discretion is cabined by law. For example, the Planning Board is tasked with "ensuring the adequacy of the streets, sewers, water supply and other essential services" and shall review proposed subdivisions based on a non-exhaustive but lengthy list of specific public works concerns such as "public health, safety and welfare," "adequacy of light and air," and "facilitation of fire protection." Village Code § 330-18, Mot. Ex. P at 4; *see also* Village Code § 330-23(A), Mot. Ex. P at 5 (requiring the Planning Board to "consider the requirements and recommendations submitted by the Superintendent of Buildings and the Village Engineer" and including detailed list of issues to address). The Planning Board may only deny a subdivision proposal "based upon professional standards" and not "upon generalized community opposition to a particular project." Village Code § 330-24(D), Mot. Ex. P at 6.

Similarly, the Zoning Board may hear and determine appeals "in accordance with the general and specific rules" outlined in municipal law. Village Code § 340-140(A)(1), Mot. Ex. P at 7. The Zoning Board may also grant variances from those rules but only in "specific cases" and "subject to appropriate conditions and safeguards." Village Code §

13

340-140(D), Mot. Ex. P at 8. The Village's discretion is therefore limited in how and why it may process a subdivision application. Accordingly, plaintiffs have alleged facts sufficient to support a constitutionally protected property interest in their subdivision plan at the motion to dismiss stage.

Plaintiffs have also met their burden to allege facts sufficient to show that the Village's continued and consistent delays amount to arbitrary and irrational conduct that may shock the conscience. From July 2020 through May 2022—for nearly two years— plaintiffs allege that Village officials and employees added several rounds of public works conditions on completion of the new road before plaintiffs could finalize the public street conveyance. Compl. ¶¶ 77–87. They did so by, for example, requiring plaintiffs to file costly utility easements, Compl. ¶¶ 81–82, and post a $950,000 performance bond for a $300,000 construction project, Compl. ¶ 84, and delaying a BOT meeting after a Village official complained of sand at the bottom of wells that are themselves set in sand, Compl. ¶ 86. Furthermore, plaintiffs allege that the Village unduly delayed their subdivision "with the goal of destroying [the] project in order to curry favor with members of the public and to appease angry Village residents who disliked the development." Compl. ¶¶ 105–06. Taken together, these allegations plausibly suggest that the Village was acting in an arbitrary or irrational manner in delaying the final completion and approval of their subdivision.

It is true that hearing and considering community opposition is squarely within the function of a local government founded on principles of deliberative democracy. But plaintiffs' allegations, taken as true at the pleading stage, detail months of changing punch lists, additional street requirements without warning or notice, and delayed consideration of their efforts to comply with the Village's myriad and everchanging demands. *See*

14

Compl. ¶¶ 73–89. While plaintiffs' claims are certainly not ironclad—and indeed the Court finds plaintiffs' allegations to be thin—the Court finds that plaintiffs have sufficiently pled a substantive due process claim.

      a. Equal Protection

The Village moves to dismiss plaintiffs' equal protection claim on the ground that they fail to identify a similarly situated development. Mot. at 21–22. Plaintiffs counter that they have stated a "class of one" equal protection claim based on two similar developments that the Village approved in one year, as compared to plaintiffs' six-year process. Opp'n at 22. For the reasons stated below, the Court finds that plaintiffs have failed to allege facts sufficient to support their equal protection claim.

Under a "class of one theory of Equal Protection," a plaintiff must allege first that it "has been intentionally treated differently from others similarly situated" and second that "there is no rational basis for the difference in treatment." *Hu v. City of New York*, 927 F.3d 81, 91 (2d Cir. 2019) (citing *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)). The Second Circuit has clarified that these claims require allegations of "extremely high" similarity between a plaintiff and any comparators such that they are "*prima facie* identical." *Hu*, 927 F.3d at 92. To support this degree of similarity, a plaintiff must allege that "(i) no rational person could regard the circumstances of the plaintiff to differ from those of a comparator to a degree that would justify the differential treatment on the basis of a legitimate government policy; and (ii) the similarity in circumstances and difference in treatment are sufficient to exclude the possibility that the defendant acted on the basis of a mistake." *Id.*

Here, plaintiffs allege that the Village previously "approved at least two subdivisions in the past 20 years": Rockville Manor and Arbor Inn Homes (together, the

15

"Comparators"). Compl. ¶¶ 90, 91, 93. Plaintiffs further allege that the Village's approval of their subdivision took "[f]ive years, eight months and seventeen days," Compl. ¶ 88, as compared to the roughly one-year processes for the Comparators, Compl. ¶¶ 92, 94. To support their allegations of differential treatment, plaintiffs claim that political and personal animus drove the Village's delayed consideration of their application, whereas the approval process for the Comparators did not feature the "delays and prejudicial and illegal actions visited upon [plaintiffs] application." Compl. ¶ 90. As stated *supra* (citing Compl. ¶¶ 77–87, 105–106) in the context of plaintiffs' substantive due process claim, these allegations could support a plausible inference that that the Village acted without a rational basis in delaying the approval of plaintiffs' subdivision and therefore satisfy the second prong of their class of one equal protection claim. However, plaintiffs fail to allege sufficient similarity with the Comparators.

Plaintiffs allege that that the Comparators were "nearly identical" to plaintiffs' proposed subdivision, Compl. ¶ 90, but provide little support for this conclusory allegation. They allege that the Comparators were located within the same residential zoning district as plaintiffs' property and likewise required and received approval by the Planning Board for seven and nine lots, respectively, on new cul-de-sac roadways. Compl. ¶¶ 91, 93. They do not, however, indicate whether those new roadways were offered as private or public streets—in fact, the Comparators would have been operating under the Village's prior definition of "street," which itself may defeat the required high degree of similarity for plaintiffs' class of one equal protection claim. Nor do plaintiffs allege that, for example, the Comparators faced similar amounts of community opposition or concerns during the Village's review of their subdivision applications. *See, e.g.*, *Lepper v. Scordino*, No. 22-cv-01064, 2023 WL 4004220, at *2 (2d Cir. June 15, 2023) (summary

16

order) (finding "presence of a complaint" about plaintiffs' property but not the alleged comparators "by itself renders the [plaintiffs] and their comparators materially dissimilar"). Moreover, plaintiffs' allegations of similarity are insufficient here in light of the nearly two decades that have passed since those subdivisions were approved in 2003 and 2005, respectively. *See Cordi-Allen v. Conlon*, 494 F.3d 245, 253 (1st Cir. 2007) ("In the land-use context, timing is critical and, thus, can supply an important basis for differential treatment."). While it may be possible to allege facts showing that the roughly twenty years between the Comparators and their subdivision application does not defeat the required "extremely high" degree of similarity, *Hu*, 927 F.3d at 92, plaintiffs have not done so here.

As currently pled, and drawing all reasonable inferences in their favor, plaintiffs' equal protection claim does not reach the bounds of plausibility and is therefore dismissed. However, the Federal Rules of Civil Procedure instruct courts to "freely give leave" to amend pleadings "when justice so requires," as is often the case at the motion to dismiss stage. Fed. R. Civ. P. 15; *see also Hayden v. Cnty. of Nassau*, 180 F.3d 42, 53 (2d Cir. 1999) ("When a motion to dismiss is granted, the usual practice is to grant leave to amend the complaint"). Because amendment here would be neither futile nor unfairly prejudicial, the Court grants plaintiffs leave to amend their complaint to add more specific allegations in support of their equal protection claim. *See Pappas v. City of New York*, No. 23-cv-06010, 2024 WL 2093472, at *15 (S.D.N.Y. May 9, 2024) ("[A] motion to amend should be denied only if the moving party has unduly delayed or acted in bad faith, the opposing party will be unfairly prejudiced if leave is granted, or the proposed amendment is futile.").

      a. <u>First Amendment Retaliation</u>

The Village seeks to dismiss plaintiffs' First Amendment retaliation claim on two grounds: (i) plaintiffs obtained approval for the subdivision without undue delay, and (ii) plaintiffs fail to plead that any speech was chilled in the approval process. Mot. at 25–27. In opposition, plaintiffs argue that they have sufficiently pled a First Amendment retaliation claim based on their "right to speak via litigation in the courts." Opp'n at 22. Plaintiffs' allegations are insufficient to support a First Amendment retaliation claim.

In order to plead a First Amendment retaliation claim, a plaintiff must allege that "(1) he has an interest protected by the First Amendment; (2) defendants' actions were motivated or substantially caused by his exercise of that right; and (3) defendants' actions effectively chilled the exercise of his First Amendment right." *Curley v. Vill. of Suffern*, 268 F.3d 65, 73 (2d Cir. 2001). However, with respect to the third requirement, "[c]hilled speech is not the *sine qua non* of a First Amendment claim." *Dorsett v. Cnty. of Nassau*, 732 F.3d 157, 160 (2d Cir. 2013) (per curiam). A plaintiff may satisfy this prong by showing "some other concrete harm" that is not based in the plaintiff's speech itself. *Id.*; *see also Searle v. Red Creek Cent. Sch. Dist.*, No. 22-cv-02049, 2023 WL 3398137, at *2 (2d Cir. May 12, 2023) ("[I]n limited contexts, other forms of harm have been accepted in place of this 'actual chilling' requirement."). Still, "only limited sorts of concrete harms will substitute for chilling effect." *Schoolcraft v. City of New York*, 133 F. Supp. 3d 563, 572–73 (S.D.N.Y. 2015).

Plaintiffs' allegation of a chilling effect is not based on plaintiffs' speech itself. Instead, they allege harm in the form of delay. Specifically, plaintiffs claim that, in retaliation for their "right to speak via litigation in the courts" through the 2017 Article 78 proceeding, defendant engaged in "bad-faith delays and continuous efforts to make it as

18

difficult and unpleasant as possible for Plaintiffs to complete the subdivision process, up through and including the antics over the construction and dedication of the new roadway." Opp'n at 22.

"Various non-speech related harms are sufficient" to satisfy the third requirement for a First Amendment retaliation claim, including a "lost government contract," "additional scrutiny at [a] border crossing," "revo[cation of] a building permit," and a "refusal to enforce zoning laws." *Dorsett*, 732 F.3d at 160 (citing *Zherka v. Amicone*, 634 F.3d 642, 646 (2d Cir. 2011); *Tabbaa v. Chertoff*, 509 F.3d 89, 102 (2d Cir. 2007); *Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 90 (2d Cir. 2002); *Gagliardi v. Vill. of Pawling*, 18 F.3d 188, 195 (2d Cir. 1994)). However, a county legislature's "delay in approving" the terms of an agreement does not "constitute[] a concrete injury" resulting from an alleged violation of plaintiffs' First Amendment rights where "plaintiffs ha[ve] no right to have the settlement approved by a date certain." *Dorsett*, 732 F.3d at 161. This was so even where plaintiffs alleged that the delay resulted in a loss of $8 million. *Id.*

Plaintiffs similarly do not allege that the Village was required by law to review their subdivision plan within a specific period of time. And while they allege that their property "could yield up to seven legal 'as of right' building lots," Compl. ¶ 13, plaintiffs do not claim that the Village was at any time *required* to approve their subdivision. Instead, the Village tasked the BOT, Planning Board, and Zoning Board with reviewing plaintiffs' application and determining whether to deny or approve their subdivision. Moreover, plaintiffs' demand for no less than $7 million in damages, Compl. ¶ 131, does not transform their purported harm of delay into a concrete harm sufficient to substitute for the chilled speech requirement. *See Dorsett*, 732 F.3d at 161.

19

Accordingly, plaintiffs have failed to sufficiently allege a First Amendment retaliation claim, which is therefore dismissed. However, because amendment would be neither futile nor unfairly prejudicial, the Court grants plaintiffs leave to amend their complaint as to their First Amendment claim.

## CONCLUSION

Accordingly, the Court **DENIES** in part and **GRANTS** in part the Village's Motion. Plaintiffs' Fourteenth Amendment equal protection and First Amendment retaliation claims, Counts II and III of the complaint, are **DISMISSED** without prejudice. The Court grants plaintiffs leave to amend their complaint within twenty-one (21) days of the date of this Order.

**SO ORDERED.**

                                                                  _/s/ Natasha C. Merle_
                                                                NATASHA C. MERLE
                                                                United States District Judge

Dated:        July 8, 2024
               Brooklyn, New York